# Cooley

Philip M. Bowman
T: +1 212 479 6634
pbowman@cooley.com

October 5, 2023                                                           **VIA ECF**

The Honorable Naomi Reice Buchwald, United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:     ***Olivet University v. Newsweek LLC et al.*, Case No. 1:23-cv-05670**

Dear Judge Buchwald:

      We represent Plaintiff Olivet University ("Olivet") in this action, and write in response to Defendants' pre-motion letter dated October 2, 2023, ECF No. 29 (the "October 2 Letter"), indicating that Defendants intend to move to dismiss the First Amended Complaint, ECF No. 26 (the "FAC") under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). The FAC states a claim for defamation per se against the Defendants, and there are no grounds for dismissal.[1]

      As demonstrated in Olivet's letter dated September 14, 2023, ECF No. 25 (the "September 14 Letter") (incorporated herein by reference), Olivet's allegations state a claim against Defendants for defamation per se. Nothing in Defendants' pre-motion letters suggest otherwise. All four of Defendants' challenges to the FAC fail.

      *First*, as shown in Olivet's September 14 Letter, Olivet has alleged a false statement. Defendants stated that "***Olivet pleaded guilty to money laundering***, as did several of Jang's followers and companies they ran." FAC ¶ 4. But Olivet's relevant plea was to "conspiracy in the fifth degree," a misdemeanor. *Id.* ¶ 5. A typical reader would readily understand a misdemeanor conspiracy to be a very different thing than a felony offense of money laundering.

      Defendants' arguments add nothing to their first pre-motion letter. They still implicitly concede that their statement is false and attempt to disguise that falsity with facts not even alleged in the FAC. *See* October 2 Letter at 2. Their assertions fail once again.

      *Second*, as also shown in Olivet's September 14 Letter, Olivet has alleged that Defendants are not entitled to New York's fair report privilege. *See* N.Y. CIV. RIGHTS LAW § 74; *Martin v. Daily News L.P.*, 121 A.D.3d 90, 100 (1st Dep't 2014) (citation omitted) (observing the fair report privilege protects articles "if the gist of the articles constitutes a 'fair and true report'"). The fair report privilege protects journalists and media outlets that seek to report fairly and accurately on legal matters. As explained in Plaintiff's September 14 letter, Defendants are not entitled to this

---

[1] Unless otherwise stated, all capitalized terms herein refer to those defined in the FAC.

# Cooley

October 5, 2023
Page Two

privilege. Moreover, Defendants continue to ignore that the fair report privilege does not apply here because their statement that Olivet pled to a felony offense of money laundering—as opposed to a misdemeanor conspiracy—"suggest[s] more serious conduct than that actually suggested in the official proceeding." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (citation omitted).

*Third*, the incremental harm doctrine is no defense to Olivet's defamation claim. The incremental harm doctrine provides that "a plaintiff may have had his reputation so badly damaged by true statements in a particular publication that minor false accusations within the same publication cannot result in further meaningful injury." *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 303 (2d Cir. 1986) (citation omitted). This defense "typically arise[s] on a motion for summary judgment, after there has been evidence to demonstrate the presence or absence of actual malice and the degree of harm caused by the different statements." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468–69 & n.10 (S.D.N.Y. 2012).

The defamatory statements here suggest to a typical reader that Olivet admitted that it had committed the felony offense of money laundering. None of the other statements that Defendants identify in the October 2 Letter come close to inflicting such damage on Olivet's reputation. In the October 2 Letter, Defendants point to their reporting of mere accusations (e.g., an "investigation into whether Olivet laundered money") or generic and vague findings (e.g., of a "pattern of mismanagement"). October 2 Letter at 3. None of these statements rises to the level of suggesting that Olivet itself admitted to the felony offense of money laundering.

In any event, courts roundly reject assertions of the incremental harm doctrine where, as here, defendants raise it on a motion to dismiss. *See, e.g.*, *Conde Nast*, 883 F. Supp. 2d at 468–69 & n.10 (declining to apply incremental harm doctrine at the motion to dismiss stage "[b]ecause there has been no evidence on malice or the degree of harm caused by the allegedly defamatory statements"); *see also Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996) (refusing "to measure the harm flowing from the challenged statement as compared to the harm flowing from the rest of the publication" because "the parties ha[d] not yet conducted discovery on the issue of damages") (citation omitted).

*Fourth*, the FAC shows that specific jurisdiction exists over Defendant Alex Rouhandeh. In assessing whether specific jurisdiction exists over a non-resident defendant, courts examine whether (1) the "defendant conducted sufficient activities to have transacted business within the state"; and (2) a "plaintiff's claims arise from the transactions." *English v. Avon Prods., Inc.*, 206 A.D.3d 404, 406 (1st Dep't 2022) (citations omitted). Specific jurisdiction exists "when at least part of the defamatory content was created, researched, written, developed, or produced in New York." *Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 662 (S.D.N.Y. Mar. 4, 2020) (collecting cases).



October 5, 2023
Page Three

      Here, Defendant Rouhandeh transacted business within New York by co-authoring an article with a New York resident (Defendant Jamali) regarding Olivet's plea with the District Attorney of the County of New York, relating to Olivet's conduct in New York.  *See, e.g.*, *Sovik v. Healing Network*, 244 A.D.2d 985, 987 (4th Dep't 1997) (concluding specific jurisdiction existed where defendants "drafted the letter and either distributed or authorized the distribution of the letter in the Buffalo area," showing "their active involvement and personal control over the writing and distribution of the allegedly defamatory statement").  Olivet's claim also clearly arises from Defendant Rouhandeh's activities relating to the defamatory statement, purposefully targeting New York.  These facts are sufficient to establish specific jurisdiction under N.Y. C.P.L.R. § 302.

Respectfully submitted,

*Philip M. Bowman*
Philip M. Bowman