# Cooley

Philip M. Bowman
T: +1 212 479 6634
pbowman@cooley.com

January 19, 2024                                                                                                   **VIA ECF**

The Honorable Naomi Reice Buchwald, United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *Olivet University v. Newsweek LLC et al.*, Case No. 1:23-cv-05670

Dear Judge Buchwald:

      We represent Plaintiff Olivet University ("Olivet") in this action and, in accordance with Your Honor's Individual Practices, Rule 2.E.1, we write to outline Plaintiff's opposition to Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and to respectfully request oral argument on all issues raised by Defendants' motion.

## Background

      In 2013, Newsweek was acquired by IBT Media Inc., then co-owned by Etienne Uzac and Jonathan Davis, both of whom, like Newsweek's current CEO, Dev Pragad, had close ties to Olivet. First Amended Complaint ("FAC") ¶¶ 20–21, 23. In 2018, when Uzac and IBT Media Inc. were under investigation by the Manhattan District Attorney's Office in connection with certain loans that Uzac facilitated for IBT Media Inc., Pragad encouraged Uzac to distance himself from operating and managing Newsweek. *Id.* ¶ 22.

      Pragad declared himself President and CEO of Newsweek and started taking steps to seize full control of Newsweek. *Id.* ¶¶ 24, 26. Litigation arose between Davis, Pragad, and IBT Media Inc., among others. *Id.* ¶ 27. In the midst of the conflict, Pragad threatened Olivet and others to publish negative news stories about them. *Id.* ¶ 28. On July 2, 2022, Newsweek published the 2022 Article, authored by Defendant Jamali, which falsely reported that "Olivet pleaded guilty to money laundering[.]" *Id.* ¶¶ 4, 29. On March 28, 2023, Newsweek published the 2023 Article, this time co-authored by Jamali and Alex Rouhandeh, which again falsely reported that "Olivet University has previously pleaded guilty to money laundering in New York." *Id.* ¶¶ 4, 31–32, 39. These statements were false, as Defendants well knew: Olivet never pled guilty to money laundering; rather, it pled to the lesser offenses of falsification of business records in the first degree, a Class "E" felony in violation of N.Y. Penal Law § 175.10, and conspiracy in the fifth degree, a Class "A" misdemeanor in violation of N.Y. Penal Law § 105.05(1). *Id.* ¶ 34. Pursuant to its plea agreement, after two years, Olivet withdrew its guilty plea to all charges except the misdemeanor conspiracy charge, and re-pled guilty to the lesser offense of falsification of business records in the second degree, also a misdemeanor. *Id.* Defendant Jamali knew this and, well

# Cooley

January 19, 2024
Page Two

before the 2022 Article was published, he tweeted that "[t]he money laundering charges & all felony charges have been dismissed & the case is fully resolved as a misdemeanor matter." *Id*. ¶ 36 & n.7.

## Argument

### A.  The Complaint Adequately Alleges Falsity

"To survive a motion to dismiss, a plaintiff must 'plead facts that, if proven, would allow a reasonable person to consider the statement false.'" *LoanStreet, Inc. v. Troia*, No. 21-cv-6166 (NRB), 2022 WL 3544170, at *6 (S.D.N.Y. Aug. 17, 2022) (citing *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017)).  Olivet has alleged two false statements.  Plainly a reasonable person could consider Defendants' statements that "**Olivet pleaded guilty to money laundering**[]" and "**Olivet University has previously pleaded guilty to money laundering** in New York" false, where Olivet never pleaded guilty to money laundering. And by the time of Defendants' statements, Olivet had its plea reduced to two misdemeanors, "conspiracy in the fifth degree" and "falsification of business records" in the second degree.  FAC ¶¶ 4–5, 34.  As such, Olivet has at the very least pled facts that if proven, would allow a reasonable person to consider the defamatory statements false.  *See LoanStreet*, 2022 WL 3544170, at *6 (denying motion to dismiss as to certain claims where plaintiffs' allegations were sufficient to challenge the truth of defendants' statements); *see also Corp. Training Unlimited, Inc. v Natl. Broadcasting Co., Inc.*, 868 F. Supp. 501, 508, 510 (E.D.N.Y. 1994) (refusing to dismiss defamation claim when the contested statements, considered in full context, were "reasonably susceptible of a defamatory meaning.")

Defendants cannot contest that the FAC alleges that the statements are literally false. Instead, they argue that the statements are "substantially true." But, "[a]s an initial matter, before defendants can assert the affirmative defense of substantial truth in a 12(b)(6) motion, they must first establish that the defense appears on the face of plaintiff's complaint." *Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*, 09–cv–0077 (DLI)(JMA), 2010 WL 1223590, at *6 (E.D.N.Y. Mar. 23, 2010) (citing *Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007). Defendants' defense does not appear on the face of the Complaint and therefore cannot be considered on a motion to dismiss.  Moreover, the fact that other defendants pleaded guilty to money laundering and that Olivet *could have been* found liable for their actions does not make the statement that *Olivet* "pleaded guilty to money laundering" substantially true when it manifestly did not do so and when, by the time Defendants published the defamatory statements, as Defendants knew, Olivet had pleaded guilty to two misdemeanors, neither of which was money laundering.

Defendants' argument that the statements are mere technical inaccuracies is based on inapposite and otherwise out-of-circuit cases that do not apply New York law.  For example, in *Landa v. Am. Prospect, Inc.*, 22-cv-1825 (JMA)(ARL), 2023 WL 5266334, *4 (E.D.N.Y. Aug. 16, 2023), when the challenged statements were published, the judicial document order on which they



January 19, 2024
Page Three

were based had not been vacated.  *Id*.  Here, Olivet never pled guilty to money laundering and, when Defendants published the defamatory statements, Olivet had resolved the case by pleading guilty two misdemeanors, neither of which was money laundering.

**B.  The Fair Report Privilege Does Not Apply to Either Statement**

Defendants also contend that the fair report privilege applies.  But the law is clear that the "fair report" privilege does not apply where the report suggests more serious conduct than that suggested in the official proceeding.  *Bilinski v. Keith Haring Found. Inc.*, 96 F. Supp. 3d 35, 49 (S.D.N.Y. 2015) (explaining that "[a]pplication of the fair reporting privilege is inappropriate at the motion to dismiss stage if a reasonable jury could conclude that the report 'suggest[ed] more serious conduct than that actually suggested in the' judicial proceeding[]" and declining to apply the privilege on that basis) (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)) (alteration in original).

Moreover, the FAC adequately alleges that Defendants' report was neither fair nor true, and that the Defendants were not even trying to provide a fair and true report given Pragad's dispute with Olivet leadership.  FAC ¶¶ 28, 29. Under these circumstances, Defendants should not be permitted to take refuge in privileges designed to protect the media and journalists who report in good faith on judicial proceedings.  *See Corp. Training Unlimited, Inc.*, 868 F. Supp. at 510 (refusing to apply the fair report privilege at the motion to dismiss stage where the reporting was stylized in a way that belied "the notion that [defendant] was even attempting to provide a fair and true report of a judicial proceeding."); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 95 (2d Cir. 2017) (reversing dismissal of a defamation claim after determining that the § 74 privilege did not apply in part because published statement was not an "accurate report" of the underlying proceeding.).

**C.  The Incremental Harm Doctrine Is Not Applicable**

"[T]he incremental harm doctrine is to be sparingly applied, if at all."  *Stern v Cosby*, 645 F. Supp. 2d 258, 287 (S.D.N.Y. 2009).  In all events, it is not suitable to a motion to dismiss, but "typically arise[s] on a motion for summary judgment, after there has been evidence to demonstrate . . . the degree of harm caused by the different statements."  *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468–69 & n.10 (S.D.N.Y. 2012) (citing *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996); *James v. DeGrandis,* 138 F. Supp. 2d 402, 419 (W.D.N.Y. 2001) (refusing to apply the incremental harm doctrine to dismiss a defamation claim where the doctrine's application would require resolving question of fact of whether one statement "caused only incremental harm when compared with [other published] statements").

Respectfully submitted,

*Philip M. Bowman*
Philip M. Bowman