UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
OLIVET UNIVERSITY,

        Plaintiff,

     - against -

NEWSWEEK DIGITAL LLC, NEWSWEEK LLC,
NEWSWEEK MAGAZINE LLC, NEWSWEEK
PUBLISHING LLC, NW DIGITAL LLC, NW
MAGAZINE LLC, NW MEDIA HOLDINGS CORP.,
and NAVEED JAMALI,

        Defendants.
-----------------------------------X

**MEMORANDUM AND ORDER**

23 Civ. 5670 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Olivet University ("plaintiff" or "Olivet") asserts a single claim of defamation <u>per se</u> against the news outlet Newsweek and a journalist based on a statement appearing in two articles that Olivet pleaded guilty to money laundering. Defendants have moved to dismiss Olivet's complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion and dismisses the case.

<u>**BACKGROUND**</u>

**A.  Factual Background**

**1. The Parties**

Plaintiff Olivet University ("plaintiff" or "Olivet") is a private religious institution consisting of multiple colleges,

with a main campus in southern California.  ECF No. 26 ("Am. Compl.") ¶ 7.  Olivet is affiliated with the Olivet church, which was founded and led by David Jang ("Jang").  Id. ¶ 2.  Defendants include the news outlet Newsweek and numerous related entities[1] (collectively, "Newsweek") as well as an author of the relevant articles Naveed Jamali ("Jamali" and together with Newsweek, "defendants").[2]  Id. ¶¶ 8-15.

## 2. Olivet's Relationship with Newsweek

According to the operative complaint, Newsweek has long had ties with Olivet.  Id. ¶¶ 20-27.  In 2013, Newsweek was acquired by a company co-owned by two individuals affiliated with Olivet, a member of the Board and a professor who was married to Olivet's then-president.  Id. ¶ 21.  At some point in or around January 2018, Newsweek was spun off to another company co-owned by another member of the Olivet community, Dev Pragad ("Pragad"), who became the President and Chief Executive Officer of Newsweek.[3]  Id. ¶¶ 21-

---

[1] These entities include Newsweek Digital LLC, Newsweek LLC, Newsweek Magazine LLC, Newsweek Publishing LLC, NW Digital LLC, NW Magazine LLC, and NW Media Holdings Corp.  Am. Compl. ¶¶ 8-14.  According to Newsweek, the entity responsible for publication of the relevant articles is Newsweek Digital LLC. ECF No. 42 at 1 n.1.

[2] Olivet initially sued another author Alex Rouhandeh but later voluntarily dismissed its claims against him.  See ECF No. 48.

[3] Olivet seems to dispute the validity of this transaction, but that issue is not before the Court and is irrelevant to resolving the present motion.

24.  Olivet alleges that in this new role, Pragad began to "take steps . . . to seize full control of Newsweek."  <u>Id.</u> ¶ 26.

### 3. Olivet's Criminal Charges

As Newsweek was undergoing these changes, Olivet and individuals associated with Olivet were facing criminal charges brought by the Manhattan District Attorney's Office.  <u>See id.</u> ¶¶ 22, 34-35.  On October 31, 2018, a New York County grand jury indicted Olivet, Olivet's Trustee William Anderson, Olivet's Dean and Finance Director Lingyi Xiao, and Olivet's Chairman of the Board of Trustees Andrew Lin on sixteen counts arising from their alleged participation in and conspiracy to commit a fraudulent sham financing scheme.  ECF No. 34-1 (Indictment, <u>New York v. Anderson et al.,</u> Indictment No. 3873/2018 (N.Y. Sup. Ct. Nov. 15, 2018) (the "Indictment")).[4]  Anderson, Xiao, Olivet, and others were also charged with laundering the proceeds of that scheme. <u>Id.</u> at 19 (Count Fourteen).

---

[4] This indictment and the related documents discussed and cited below are public judicial documents from Olivet's criminal case.  As will become clear, the specific crimes with which Olivet was charged and to which Olivet ultimately pleaded guilty are at the heart of Olivet's defamation claim.  As such, the Court may consider them on a motion to dismiss.  <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002).  Additionally, "courts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint."  <u>Koch v. Christie's Int'l PLC</u>, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011).

On February 11, 2020, Anderson pleaded guilty to money laundering in the second degree and to participating in a scheme to defraud in the first degree.  ECF No. 34-2 at 8-9 (Transcript of Plea, <u>New York v. Anderson et al.</u>, Indictment No. 3873/2018 (N.Y. Sup. Ct. Feb. 11, 2020) (the "Transcript")).  Xiao and Lin both pleaded guilty to participating in a scheme to defraud in the first degree.  <u>Id.</u>

At the same plea allocution, Olivet, through its counsel, pleaded guilty to (1) Count Four of the Indictment, falsifying business records in the first degree, a felony; and (2) Count Three of the Indictment, conspiracy in the fifth degree, a misdemeanor. <u>Id.</u> at 4-7; <u>see also</u> ECF No. 34-3 (the "Plea Agreement") ¶ 5.  As stated in the Indictment, Count Three accused the defendants, including Olivet, of engaging in a conspiracy "with intent that conduct constituting a class C felony, to wit, Money Laundering in the Second Degree, be performed."  Indictment at 9.

Prior to accepting Olivet's guilty plea, as part of the allocution, the court stated the facts underlying Olivet's guilty plea to which Olivet's counsel agreed, including that (1) "[d]uring the period of this conspiracy the defendant William Anderson was a trustee of defendant Olivet University," Transcript at 9; (2) "[d]efendant Anderson has pleaded guilty to Money Laundering in

-4-

the Second Degree," id.; and (3) "[Anderson was a] high managerial agent[] of Olivet University and [was] acting within the scope of [his] employment and on behalf of Olivet University when [he] committed such criminal acts during the period of and in furtherance of the conspiracy," id. at 10.[5]

Olivet's plea agreement provided that if Olivet complied with the terms of the agreement for 24 months, then the felony charge of falsification of business records (Count Four) would be reduced to a misdemeanor, and all remaining counts of the Indictment, except the conspiracy charge (Count Three), would be dismissed. Am. Compl. ¶ 34.   Accordingly, on February 22, 2022, having complied with the terms of the agreement, Olivet repleaded to a misdemeanor charge of falsifying business records and all other charges, save the conspiracy charge, were dismissed.  Id.

**4. The Disputed Articles**

Meanwhile, in April 2022, after Olivet had pleaded guilty to the criminal charges described above, Pragad announced publicly

---

[5] Olivet also admitted to the fact that the objects of this conspiracy were specifically to benefit Olivet, namely, "fraudulently to obtain financing from financial institutions, divert the proceeds for the financing, and conceal its origins in order to fund defendant Olivet University's day-to-day operations and meet other needs unrelated to the stated purpose of the financing, and to maintain a credit profile sufficient to continue promoting the financing scheme."  Transcript at 9-10.

that he was disassociating from Olivet.  <u>Id.</u> ¶ 26.  According to

Olivet's complaint, by July 2022, the relationship between

Newsweek and Olivet had "disintegrated." <u>Id.</u> ¶ 28.  Olivet alleges

that at around that time, Pragad "threatened to detonate a 'nuclear

bomb' by weaponizing Newsweek's platform to publish negative

stories about [] Olivet, and others associated with [it]." <u>Id.</u>

On July 2, 2022, Newsweek published an article on its website

written by defendant Jamali, entitled <u>New York Shuts Down Olivet</u>

<u>University Amid Federal Money-Laundering Probe</u> (the "2022

Article").  Am. Compl, Ex. A.  The 2022 Article outlined New York's

decision to shut down both of Olivet's campuses in the state as a

result of Olivet's "pattern of mismanagement" and "its ties to

criminal activity." <u>Id.</u> at 3.  Specifically, the Article reported

that the Department of Homeland Security ("DHS") had opened an

investigation into whether Olivet "was part of a scheme to launder

money for criminals in China and the United States." <u>Id.</u> at 2.

As part of this discussion, the Article noted that Olivet had been

"thrust into the national media spotlight in 2018 when the

Manhattan District Attorney announced indictments in a fraud and

money laundering probe unrelated to the current federal

investigation.  Olivet pleaded guilty to money laundering[.]" <u>Id.</u>

at 3.

On March 28, 2023, Newsweek published an article co-authored by Jamali and now-dismissed defendant Rouhandeh, entitled California Moves to Shut Down David Jang's Olivet University as Feds Circle (the "2023 Article" and together with the 2022 Article, the "Articles"). Am. Compl., Ex. B.[6] In the 2023 Article, Newsweek reported on another investigation, this one commenced by California's Attorney General, into whether California should revoke or suspend Olivet's license to operate college campuses in the state based on fourteen alleged violations of the state's education regulations. Id. at 2. The 2023 Article explained that DHS had already opened "an unrelated investigation into whether Olivet laundered money" and was also "looking at whether [Olivet] trafficked labor and broke visa laws with regard to students on its campus, many of whom come from China." Id. at 3. The Article extensively described the DHS investigation as well as other scrutiny Olivet was facing from an array of state and federal authorities. Id. at 3-8. Within that survey, the Article twice noted that Olivet University had previously pleaded guilty to a money laundering charge in New York. Id. at 3.

---

[6] The Articles were both attached to Olivet's operative complaint, and therefore the Court may consider them on defendants' motion to dismiss. See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).

**B.    Procedural History**

Olivet filed this lawsuit on June 30, 2023.  ECF No. 1.  In its operative complaint, Olivet asserts a single count of defamation per se based on the statement in both Articles that Olivet "pleaded guilty to money laundering" when, in fact, it pleaded guilty to falsification of business records in the first degree (Count Four) and conspiracy in the fifth degree (Count Three).  Am. Compl. ¶¶ 29-35.  According to Olivet, "[p]leading guilty to a 'conspiracy' misdemeanor is a very different thing, and is recognized by the typical reader as a very different thing, than pleading guilty to money laundering, which is typically a felony."  Id. ¶ 5.  Olivet claims that as a result of these allegedly false statements, it has suffered "reputational, financial, and professional harm."  Id. ¶ 51.

On October 2, 2023, defendants filed a pre-motion letter addressing their anticipated motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 29.  Olivet responded on October 5, 2023, ECF No. 33, and the Court subsequently held a conference with the parties during which we requested the documents associated with Olivet's criminal case.  Olivet duly provided these documents on November 27, 2023.  See ECF No. 34.  On December 20, 2023, defendants moved to dismiss Olivet's complaint.  ECF Nos.

-8-

41-43. Olivet's opposition was filed on January 19, 2024, ECF Nos. 45-46, and defendants filed a reply brief in further support of their motion on February 15, 2024, ECF No. 49.

## DISCUSSION

To survive a motion to dismiss, a complaint must include "enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012).

In evaluating the sufficiency of a complaint, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). As noted above, "courts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the

-9-

documents are integral to the complaint." <u>Koch v. Christie's Int'l PLC</u>, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011).

Olivet asserts only one claim of defamation <u>per se</u>. "To state a claim for defamation under New York law, a plaintiff must allege that the defendant made a statement that was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory <u>per se</u> or caused the plaintiff special harm."[7] <u>Enigma Software Grp. USA, LLC v. Bleeping Computer LLC</u>, 194 F. Supp. 3d 263, 280 (S.D.N.Y. 2016) (citing cases).

Olivet identifies one allegedly defamatory statement repeated in both Articles, namely that Olivet pleaded guilty to a money laundering charge when, in reality, it only pleaded guilty to (1) falsification of business records in the first degree and (2) conspiracy in the fifth degree. Am. Compl. ¶¶ 29-35. Defendants argue that this statement cannot ground a claim for defamation because it (1) is substantially true; (2) is protected by the fair

---

[7] Statements that are defamatory <u>per se</u> "are actionable without pleading and proof of special damages." <u>Celle v. Filipino Reporter Enters.</u>, 209 F.3d 163, 179 (2d Cir. 2000) (internal quotation marks omitted). Two such categories of defamatory <u>per se</u> statements are those that "charg[e] plaintiff with a serious crime" and those that "tend to injure another in his or her trade, business, or profession." <u>Liberman v. Gelstein</u>, 80 N.Y.2d 429, 435 (1992). Here, defendants do not seem to dispute that the statement at issue falls within the serious crime category, but because we find that the challenged statement is not substantially false, we need not reach the question of whether it would qualify as defamation <u>per se</u>.

report privilege; and (3) caused Olivet no additional harm beyond the harm caused by the unchallenged portions of the Articles at issue. ECF No. 42 ("Mot.") at 7. Because we agree with defendants that the challenged statement is substantially true, we need not reach defendants' other arguments for dismissal.

To plead a claim for defamation, a plaintiff must plausibly allege that the challenged statement is "substantially false." Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 242 (2d Cir. 2017) (internal quotation marks omitted). The inverse is also true: if the challenged statement is "substantially true," then a claim for defamation is legally insufficient and must be dismissed. Id. "A statement is substantially true if the statement would not have a different effect on the mind of the reader from which the pleaded truth would have produced." Id. (internal quotation marks omitted). In other words, a challenged statement is substantially true and thus non-actionable if its "gist," "sting," or "substance" is true. Jewell v. NYP Holdings, Inc., 23 F. Supp. 2d 348, 366-67 (S.D.N.Y. 1998). The substantial truth doctrine is animated by practical concerns, namely, to prevent the news media from being "damaged by an overly technical or exacting conception of truth in publication." Tannerite, 864 F.3d at 243.

When evaluating the substantial truth of a statement, "[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." Id. "Despite truth often being framed as a defense to [defamation], the burden of proving the falsity of a statement rests with the plaintiff." Leidig v. BuzzFeed, Inc., 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019). Here, Olivet, as plaintiff, cannot meet its burden of plausibly alleging that the statement that it pleaded guilty to money laundering is substantially false and therefore its claim for defamation per se fails.

As Olivet acknowledges, it did plead guilty to conspiracy pursuant to Count Three of the Indictment. Am. Compl. ¶ 34. That Count, which was never dismissed or otherwise altered, specifically accuses Olivet (and others) of conspiring to engage in "conduct constituting . . . Money Laundering in the Second Degree." Indictment at 9. To be sure, defendants incorrectly stated in the Articles that Olivet pleaded guilty to money laundering, rather than to conspiracy to commit money laundering. However, such technical inaccuracies, especially in the inherently complicated context of criminal law, cannot be the basis of a defamation claim where the substance of the reported change would "not have a different effect on the mind of the reader from that

which the pleaded truth would have produced." <u>Tannerite</u>, 864 F.3d at 243 (internal quotation marks omitted).  Indeed, one leading treatise explains that "[s]tatements about crimes are often technically incorrect but substantially true.  To laypersons, 'theft' may mean any wrongful taking including such distinct crimes as embezzlement, and might even include a simple conversion of property."  D. Dobbs, P. Hayden, & E. Bublick, <u>Law of Torts</u> § 533 (2d ed. 2011).

Courts have routinely applied this principle to dismiss defamation claims based on a legally mistaken but substantially accurate statement.  For example, in <u>Carroll v. Trump</u>, No. 20 Civ. 7311 (LAK), 2023 WL 5017230 (S.D.N.Y. Aug. 7, 2023), defendant's counterclaim alleged that he was defamed by plaintiff's statement that defendant "raped" her when, in fact, he "forcibly digitally penetrated" her.  <u>Id.</u> at *8.  The court found that although plaintiff's statement was technically inaccurate, it was nonetheless substantially true because "the anatomical difference between the alleged falsehood and the truth" was a "fine and shaded distinction" that resulted in "no legal harm."[8]  <u>Id.</u> (cleaned up).

---

[8] Olivet claims that <u>Carroll</u> is distinguishable because "a finding of money laundering was not a necessary predicate to falsification of business records or conspiracy."  Opp. at 8.  However, the persuasive value of <u>Carroll</u> is found not in whether one offense was a predicate of another but rather in the court's finding that the daylight between literal rape and digital rape was not large enough for the challenged statement to be deemed substantially false.

Similarly, in <u>Jewell</u>, statements in a <u>New York Post</u> article that plaintiff was "a prime suspect" and the "main suspect" in a crime was held to be substantially true where plaintiff admitted that he was "a suspect."  23 F. Supp. 2d at 367-69.  The court acknowledged that there was a "difference between the statements," but concluded that "a reasonable reader would not have reacted differently to either these specific statements or the overall content of the [article] based upon this difference in terminology."[9]  <u>Id.</u> at 369.

These cases underscore the substantial truth of the challenged statement here.  While admittedly there is some daylight between the challenged statement that Olivet pleaded guilty to money laundering and the admitted truth that Olivet pleaded guilty to <u>conspiracy</u> to commit money laundering, nonetheless the overall gist, sting, or substance cannot be said to be substantially different.  Indeed, this is the very type of technical distinction that defamation law is meant to protect.  See <u>Tannerite</u>, 864 F.3d

---

[9] There are myriad cases illustrating the same principle, many of which are cited in defendants' submission.  <u>See</u> Mot. at 10 n.3 (citing cases); <u>see also</u> <u>Orr v. Argus-Press Co.</u>, 586 F.2d 1108, 1112 (6th Cir. 1978) (holding that characterization of a securities law violation as "fraud" was substantially true); <u>Konrath v. Vance</u>, 2017 WL 1382778, at *8 (S.D. Ind. Apr. 18, 2017) (finding statement that plaintiff was arrested for stalking to be substantially true where plaintiff was actually arrested on three counts of misdemeanor invasion of privacy); <u>Tiwari v. NBC Universal, Inc.</u>, 2011 WL 5079505, at *14-15 (N.D. Cal. Oct. 25, 2011) (finding statement that plaintiff had been convicted of attempted lewd and lascivious acts with a child, which was a felony under state law, was substantially true even though plaintiff was only convicted of a misdemeanor).

at 243 (stating that the law does not require "an overly technical
or exacting conception of truth in publication").  Had defendants
used the technically proper term <u>conspiracy</u> to commit money
laundering instead of actual money laundering, there would have
been no appreciable difference in the effect on the mind of the
average reader.  To any such reader, both money laundering and
conspiracy to commit money laundering are serious crimes that
obviously bear some close relationship to money laundering
activity.  Accordingly, because the distinction between the
alleged falsehood and the truth is a legally technical one, the
Court finds that the challenged statement is substantially true.

This conclusion is further bolstered when we consider, as we
must, the full context of the Articles.  <u>See</u> <u>id.</u>  Both Articles
extensively detail -- and indeed, are largely focused on -- <u>other</u>
investigations into Olivet's potential involvement in money
laundering schemes <u>entirely unrelated</u> to the one at the heart of
the guilty plea in New York.  For example, the second paragraph of
the 2022 Article reports that DHS was investigating whether Olivet
"was part of a scheme to launder money for criminals in China and
the United States."  2022 Article at 2.  Only after the 2022
Article further explains that "DHS investigators had searched the
premises of Olivet's headquarters . . . as part of an ongoing

criminal investigation into visa fraud, labor trafficking and money laundering" does it note that Olivet had previously "pleaded guilty to money laundering" in New York.  Id. at 3.  With that context, it becomes clear that whether defendants stated that Olivet had pleaded guilty to money laundering or to conspiracy to commit money laundering is essentially beside the point.  The central thought being conveyed was that Olivet had previously pleaded guilty to some crime involving money laundering -- the same strand of criminal activity for which it was being investigated by DHS.  Accordingly, placing the statement in its broader context adds further support for the conclusion that the gist, sting, or substance of the challenged statement and the admitted truth would not have produced a different effect on the average reader, and thus we find the statement to be substantially true.[10]

---

[10] Olivet also claims that pleading guilty to a conspiracy is a "very different thing" than pleading guilty to a felony. Am. Compl. ¶ 5.  However, Olivet, as it acknowledges, did in fact plead guilty to the felony charge of falsification of business records in the first degree. Id. ¶ 34.  Moreover, the average reader would not simply intuit that money laundering is paradigmatically a felony and conspiracy to money launder is not. Again, the effect on the average reader is simply that Olivet had pleaded guilty to some crime relating to money laundering.  In other words, it makes no difference that the conspiracy charge was a misdemeanor rather than a felony, especially because defendants did not even characterize the charge one way or the other. See Barnett v. Denver Pub. Co., Inc., 36 P.3d 145, 148 (Colo. App. Ct. 2001) (finding statement that plaintiff was convicted of stalking, when he was actually convicted of harassment, to be substantially true because "[a]lthough there is a distinction between harassment, which is a misdemeanor, and stalking, which is now a felony, both terms describe similar, repeated unsolicited behavior").

There is yet another reason why the challenged statement is substantially true.   Before entering its guilty plea, Olivet admitted in open court, as part of its plea allocution, that Anderson, one of its trustees, was a "high managerial agent[]" of Olivet who committed money laundering while "acting within the scope of [his] employment" and "on behalf of Olivet."   Transcript at 10.   The court's use of these terms was no accident.   Under New York law, a corporation is guilty of the offense committed by its agent where "[t]he conduct constituting the offense is engaged in [by] . . . a high managerial agent acting within the scope of his employment and in behalf of the corporation."   N.Y. Penal Law § 20.20(2)(b).   Thus, by making these specific admissions as the basis of its own guilty plea, Olivet expressly admitted to the factual predicates of the substantive crime of money laundering. For this additional reason, the Court cannot conclude that it was substantially false to say that Olivet pleaded guilty to money laundering.

The only additional argument Olivet advances to resist this conclusion is that substantial truth is an "affirmative defense" that "cannot be considered on a motion to dismiss."   ECF No. 45 ("Opp.") at 7.   However, Olivet ignores that this argument was expressly rejected by the Second Circuit in Tannerite.   There,

Case 1:23-cv-05670-NRB   Document 52   Filed 04/30/24   Page 18 of 19

after a careful examination of New York defamation law, the Second Circuit concluded that falsity is an element of a defamation claim that a <u>plaintiff</u> must plausibly plead to survive a motion to dismiss. <u>See</u> <u>Tannerite</u>, 864 F.3d at 245 ("Numerous cases illustrate that falsity is an element of a New York defamation claim, and that a plaintiff in New York courts generally must identify how the defendant's statement was false to survive a motion to dismiss."). As such, "[d]espite truth often being framed as a defense to [defamation], the burden of proving the falsity of a statement rests with the <u>plaintiff</u>." <u>Leidig</u>, 371 F. Supp. 3d at 143 (emphasis added). Therefore, contrary to Olivet's contention, there is nothing improper about finding the challenged statement to be substantially true and thus nonactionable at the motion to dismiss stage.

**CONCLUSION**

For the foregoing reasons, the Court grants defendants' motion and therefore dismisses the Amended Complaint with prejudice. The Clerk of Court is respectfully requested to terminate the motions pending at ECF Nos. 37, 41, and 50 and close this case.[11]

---

[11] The Court notes that Olivet filed a letter motion on April 9, 2024, requesting that the Court schedule a Rule 16(b) conference or direct defendants to

**SO ORDERED.**

Dated:      April 30, 2024
            New York, New York

_____
    NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

participate in a Rule 26(f) conference.  ECF No. 50.  Because the Court has
granted defendants' motion to dismiss, Olivet's letter motion is denied as moot.

-19-